IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division

Case No.: 06-CIV-60823-DIMITROULEAS/SELTZER

MAILPLANET.COM, INC.
A corporation of the District of Columbia
    Plaintiff,

v.

Lo Monaco Hogar, S.L.
a Limited Liability Company of Spain
    Defendant.
_____/

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C), OR IN THE ALTERNATIVE, MOTION TO TRANSFER DOMAIN NAME AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed. R. Civ. P. 12(c) Defendant, Lo Monaco Hogar, S.L., brings this motion for judgment on the pleadings against Plaintiff, Mailplanet.com, Inc.  Mailplanet's Complaint must be dismissed because the domain name that is the subject of the litigation has not been "suspended, disabled, or transferred" as required under the Anti-Cybersquatting Consumer Protection Act ("ACPA") and the Uniform Domain Name Dispute Resolution Policy ("UDRP").  In the alternative, it is respectfully requested that the subject domain be transferred to Lo Monaco pending the outcome of this litigation.  In support of this motion Lo Monaco states as follows.

## MEMORANDUM OF LAW

### I. BACKGROUND

a. Domain Name Registrations

This case concerns the ownership of a domain name. A domain name is an alphanumeric designation (e.g. uscourts.gov) that allows users to access a particular computer on the World Wide Web. See Sallen v. Corinthians, 273 F.3d 14, 19 (1st Cir. 2001) (explaining how the domain name system works under the heading "Internet Background"). A domain has two parts. The "top level" domain refers to the portion of the address after the period (e.g. .com, .net, or .org). The portion of the address proceeding the period is referred to as the "second level" domain. Second level domains are assigned to individuals and corporations by approved domain name registrars on a first-come-first-serve basis without regard to the trademark rights of third parties.

Registrars are accredited and governed by a non-profit organization known as the International Corporation for Assigned Names and Numbers ("ICANN"). ICANN requires all domain name registrars to abide by a Uniform Domain Name Resolution Policy ("UDRP"). See Ex. A, UDRP of October 24, 1999. An individual or company registering a particular domain is likewise contractually bound to follow the UDRP. Part of the UDRP addresses disputes, such as the one presented here, that arise as a result of a trademark owner asserting rights to a domain name registered by another

party. The UDRP requires that these disputes be resolved by a mandatory administrative proceeding conducted before one or more dispute resolution service providers.

### b. UDRP Proceeding

This case concerns a UDRP proceeding Lo Monaco brought against Mailplanet to secure the transfer of the lomonaco.com domain name. Lo Monaco's rights to the domain were premised on, inter alia, twelve different trademark registrations it owns in Spain and Portugal incorporating the "Lo Monaco" trademark. Although Lo Monaco sells a wide variety of household items under this mark, its best selling product is "El colchon latex natura de Lo Monaco," which is a high quality latex mattress. Lo Monaco sought to secure the lomonaco.com domain so as to avoid confusion over Mailplanet's use of the domain.

Mailplanet is an Internet company that purports to specialize in vanity email addresses; namely, email addresses wherein the domain name corresponds to a person's last name. On or about December 12, 2003, Mailplanet entered into a contract with the domain registrar Moniker Online Services, LLC, to register the lomonaco.com domain name. Although Mailplanet contends that it registered the domain to offer email services to people with the LoMonaco surname, it has yet to employ the domain for this purpose. Currently, the domain points to a search engine.

Lo Monaco filed its complaint under the UDRP on August 22, 2005 with the Arbitration and Mediation Center of the World Intellectual Property Organization ("WIPO"). A three-member WIPO panel considered written submissions by attorneys for both parties in addition to numerous exhibits. On December 2, 2005 the panel entered an order directing that the lomonaco.com domain be transferred from Mailplanet to Lo Monaco. See Ex. B (UDRP Panel Decision) Yet, due to Mailplanet's disregard for the UDRP, this decision has yet to be carried out. To date, almost a year after the UDRP Panel Decision, the lomonaco.com domain is still registered to Mailplanet.

### c. Prior Litigation

Pursuant to UDRP Rule 4(k), a registrar is required to carry out Panel Decision within ten (10) days of learning of the decision unless the non-prevailing party first brings an action in district court. See Ex. A, Rule 4(k). In the present case, Moniker Online Services, as the registrar of the lomonaco.com domain, was required to carry out the December 2, 2005 UDRP decision within ten (10) days by transferring the domain to Lo Monaco.[1] Although the exact Rule 4(k) deadline was the subject of some debate, Mailplanet's counsel acknowledged that the deadline would be no later than January 6, 2006. See Ex. C, Email from Berryhill to Cole and Moniker

---

[1] The applicability of the UDRP to the present dispute is conceded in Paragraphs 9-10 of Plaintiff's Complaint.

- 4 -

Online Services of 12/23/2005. Despite acknowledging this deadline, Mailplanet nonetheless failed to meet it. Mailplanet's complaint was filed in this Court on January 9, 2006 under Case No. 06-60031 ("First Litigation"), well over a month after the UDRP Panel Decision. The First Litigation sought a declaration under 15 U.S.C. §1114(2)(D)(iv)-(v) of the ACPA that its registration of the domain was lawful. Despite the failure of Mailplanet to comply with the Rule 4(k) deadline, the Moniker Online refused to transfer the subject domain to Lo Monaco.

Thereafter, Mailplanet failed to comply with Fed. R. Civ. P. 4 by either serving the complaint or requesting a waiver of service. The undersigned counsel wrote to Mailplanet's counsel on March 28, 2006 informing him that there had been no service and no waiver request. See Ex. D, letter from Colitz to Neu of 3/28/06. Despite this reminder, the 120 day time limit of Fed. R. Civ. P. 4(m) expired and on May 10, 2006 this Court entered an Order to Show Cause for Failure to Comply with Fed. R. Civ. P. 4(m). See Ex. E, Order of 5/10/06. Thereafter, on May 22, 2006, well after the time prescribed by Fed. R. Civ. P. 4(m), and twelve days after the Order to Show Cause, Mailplanet's counsel formally requested a wavier of service. This Court nonetheless dismissed the First Litigation without prejudice on June 1, 2006 after Mailplanet failed to timely respond to this Court's Order to Show Cause. See Ex. F, Order of 6/1/06.

d. Present Litigation

Mailplanet initiated the present litigation by merely refiling its previous complaint on June 12, 2006. The present litigation is identical in all respects to the First Litigation; namely, the present litigation seeks a declaration that Mailplanet's registration of the lomonaco.com domain does not violate the ACPA. The undersigned counsel formally waived service on July 6, 2006. On October 5, 2006 this Court entered an Order to Show Cause Why Case Should Not be Dismiss for Failure to Follow this Court's Orders. See Oct. 5 Order [Dkt. 6]  The Court's order was directed to Plaintiff's failure to timely file a Joint Scheduling Report. Thereafter, on October 6, 2006, the undersigned counsel wrote to opposing counsel in an effort to file a joint scheduling report. See Ex. G, Ltr. from Colitz to Neu of 10/6/06. Undersigned counsel again wrote to Mailplanet's counsel on October 13 in a continuing effort to get the report on file. See Ex. H, Ltr. from Colitz to Neu of 10/13/06. Lo Monaco finally filed the parties' Joint Planning and Scheduling Report on October 16, 2006. See Report [Dkt. 7]  The Court entered an Order Setting Trial Date and Discovery Deadlines on October 17, 2006. See Order of 10/17/06 [Dkt. 8]. To date, Mailplanet has not specifically responded to this Court's October 5 Show Cause Order.

The present litigation, of course, was filed over six months after the UDRP Panel Decision and well after the Rule 4(k) deadline. Despite this, and despite bringing this failure to the attention of both Mailplanet and the

registrar, the UDRP Panel Decision of December 12 has yet to be carried out. See Ex. I, Ltr. From Colitz to Moniker of 9/8/06.  Despite its total disregard for the UDRP, Mailplanet continues to be the registered owner of the lomonaco.com domain.  Mailplanet's lackadaisical approach to this and the prior litigation is no doubt a reflection of the fact that, despite failing to comply with the UDRP, it has secured the subject domain for the pendency of this litigation.

## II. GOVERNING LAW

### a. Fed. R. Civ. P. 12(c) Standard

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  Hawthorne v. Mac Adjustments, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998); see also Miami-Dade County v. U.S., 203 WL 22992271, *1 (S.D. FL 2001) (noting that in rendering a judgment on the pleadings the court may consider the pleadings as well as any judicially noticed facts).  Many federal courts have held that the standard under a Rule 12(c) motion is identical to that under Rule 12(b)(6), and that a complaint should be dismissed if it appears that the plaintiff can prove no set of facts entitling him or her to relief.  See Wright & Miller, Federal Practice and Procedure:  Civil 3d § 1368.

b. Pleading a Cause of Action Under ACPA

In order for a domain name registrant to plead a cause of action under the ACPA, it must allege: (1) that it is a domain name registrant; (2) that its domain name was suspended, disabled or transferred under a policy implemented by a registrar; (3) that the owner of the mark that caused the domain to be suspended has notice of the action; and (4) that the registrant's use of the domain name is not unlawful under the Lanham Act. See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona, 330 F.3d 617, 626 (4th Cir. 2003). These four elements come directly from the text of the ACPA, which states "A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii) (II) may, upon notice to the mark owner, file a civil action to establish that the registration ... is not unlawful. See 15 U.S.C. § 1114(2)(D)(iv).

Courts considering the "suspended, disabled or transferred" language have interpreted it to mean that the subject domain would have been suspended, disabled or transferred but for compliance with the Rule 4(k) deadline. Thus, provided that Rule 4(k) is followed, the subject domain does not need to be actually transferred in order to bring a declaratory judgment action under the ACPA. "The text of the Statute [ACPA] could be read to provide [Plaintiff] with a cause of action only after the domain name has been transferred. We agree, however, with the First and Fourth Circuits that

§ 1114(2)(D)(v) encompasses situations in which a UDRP panel has ruled against a domain name and has ordered transfer or deactivation, *but in which the order has not yet been implemented because of the Paragraph 4(k) waiting period."* See Storey v. Cello Holdings, 347 F.3d 370, 383, n. 11 (2nd Cir. 2003) (emphasis added) (citing Barcelona.com v. Excelentisimo Ayuntamiento de Barcelona, 330 F.3d 617 (4th Cir. 2003) and Sallen v. Corinthians, 273 F.3d 14 (1st Cir. 2001)).

### III. ARGUMENT

The failure of Mailplanet to meet the Rule 4(k) deadline is abundantly clear. The original complaint was filed over a month after the UDRP Panel Decision. Even by Mailplanet's own warped calendaring, the original complaint was filed beyond the deadline. See Ex. C. Even if the deadline had been met in the original case, it was indisputably missed in the present case. The present case was filed over six months after the UDRP Panel Decision. Despite these facts, the subject domain still resides with Mailplanet. This has resulted in a plaintiff that has stalled its way through two litigations in a futile effort to hold on to the subject domain for as long as it can. Mailplanet's foot-dragging and utter disregard for the rules should not be rewarded. As noted by the Second Circuit in Storey, in order to state a cause of action under the ACPA, the domain name does not need to be "suspended, disabled or transferred," but this only applies to situations where the plaintiff has met the Rule 4(k) deadline. See Storey, 347 F.3d at 383. This is not the

case here. Thus, Mailplanet can not maintain a cause of action under the ACPA without the subject domain first being transferred to Lo Monaco in accordance with the UDRP Panel Decision.

**WHEREFORE**, it is respectfully requested that the Court enter an order dismissing the present complaint and directing the registrar, Moniker Online Services, LLC, to transfer the lomonaco.com domain to Lo Monaco Hogar, S.L. In the alternative, it is respectfully requested that the lomonaco.com domain be transferred to Lo Monaco Hogar, S.L. for the duration of this litigation.

Respectfully submitted,

/s/Michael J. Colitz, III
Michael J. Colitz, III
Florida Bar Number: 0164348
Holland & Knight LLP
Suite 4100
100 N. Tampa Street
Post Office Box 1288
Tampa Florida 33602-1288
Telephone: 813-227-8500
Facsimile: 813-229-0134
Email: michael.colitz@hklaw.com
Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2006 the foregoing was furnished by First Class U.S. Mail, postage prepaid, to Howard M. Neu, 1152 N. University Drive, Pembroke Pines, FL 33024.

/s/ Michael J. Colitz, III
Michael J. Colitz, III

# 4154246_v6