UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60823-CIV-DIMITROULEAS

MAILPLANET.COM, INC.,
a corporation of the District
of Columbia

    Plaintiff,

vs.

LO MONACO HOGAR, S.L.,
a limited liability company
of Spain

    Defendant.
_____/

**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment [DE-21], filed herein on October 17, 2007 and Defendant's Motion to Dismiss [DE-34][1], filed herein on November 19, 2007. The Court has carefully considered the Motions, Defendant's Opposition to Plaintiff's Motion for Summary Judgment [DE-34], Plaintiff's Reply in Support of its Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss [DE-36], Defendant's Sur-Reply [DE-38] and is otherwise fully advised in the premises.

**I. BACKGROUND**

MailPlanet.com ("MailPlanet") operates an internet email service that provides selected internet email addresses to its customers. According to the Complaint, MailPlanet entered into a

---

[1] In Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment it indicated that it was moving for dismissal for lack of subject matter jurisdiction.

contract with Moniker Online Services to register the internet domain name[2] 'lomonaco.com.' MailPlanet intended to offer internet email services to people wishing to have an email address ending with "lomonaco.com." The contract incorporated the Uniform Domain Name Dispute Resolution Policy[3] ("UDRP"), under which a third party could dispute the rights of the contract based on a claim of trade or service mark rights. Defendant Lo Monaco Hogar, a Spanish mattress company, issued a complaint under the UDRP on August 22, 2005. On December 2, 2005, a panel appointed by the World Intellectual Property Organization, an organization based in Geneva, Switzerland, issued a UDRP decision directing Moniker to transfer the domain name to Lo Monaco. According to the UDRP, such a decision does not preclude the dispute being submitted to a "court of competent jurisdiction for independent resolution . . . after such

---

[2] Every web page "has a corresponding domain address, which is an identifier somewhat analogous to a telephone number or street address. Domain names consist of a second-level domain-simply a term or series of terms (e.g., westcoastvideo)-followed by a top-level domain, many of which describe the nature of the enterprise. Top-level domains include '.com' (commercial), '.edu' (educational), '.org' (non-profit and miscellaneous organizations), '.gov' (government), '.net' (networking provider), and '.mil' (military). Commercial entities generally use the '.com' top-level domain, which also serves as a catchall top-level domain.... Each web page must have a unique domain name.... Using a Web browser, such as Netscape's Navigator or Microsoft's Internet Explorer, a cyber 'surfer' may navigate the Web-searching for, communicating with, and retrieving information from various web sites. A specific web site is most easily located by using its domain name. Upon entering a domain name into the web browser, the corresponding web site will quickly appear on the computer screen. Sometimes, however, a Web surfer will not know the domain name of the site he is looking for, whereupon he has two principal options: trying to guess the domain name, or seeking the assistance of an Internet 'search engine' [such as Yahoo!]. Oftentimes, an Internet user will begin by hazarding a guess at the domain name, especially if there is an obvious domain name to try. Web users often assume, as a rule of thumb, that the domain name of a particular company will be the company name followed by '.com'.... Sometimes, a trademark is better known than the company itself, in which case a Web surfer may assume that the domain address will be 'trademark.com'...." Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1044-45 (9th Cir. 1999) (internal citations omitted).

[3] "The UDRP is intended to provide a quick process for resolving domain name disputes by submitting them to authorized panels or panel members operating under rules of procedure established by [the Internet Corporation for Assigned Names and Numbers ("ICANN")] and under "any rules and principles of law that [the panel] deems applicable." Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona, 330 F.3d 617, 626 (4th Cir. 2003) (citing ICANN, Rules for Uniform Domain Name Dispute Resolution Policy, ¶ 15(a), at http://www.icann.org/dndr/udrp/uniform-rules.htm (Oct. 24, 1999)).

proceeding is concluded." UDRP (4)(k), at http://www.icann.org/udrp/udrp-policy-24oct99.htm (Feb. 5, 2002).

Accordingly, on January 9, 2006 MailPlanet filed a complaint seeking declaratory relief to prevent transfer of the domain name to Lo Monaco. (Case No. 06-60031-CIV-DIMITROULEAS). On June 1, 2006, this Court dismissed, without prejudice, the complaint for failure to serve Lo Monaco. [DE-4 in Case No. 06-60031-CIV-DIMITROULEAS]. The Court denied further relief on June 13, 2006. [DE-7 in Case No. 06-60031-CIV-DIMITROULEAS]. MailPlanet then refiled a Complaint for Declaratory Relief and Relief under 15 U.S.C. § 1114(2)(D)(iv)-(v), the Lanham Act, on June 12, 2006. [DE-1]. MailPlanet seeks a declaration of its rights in regards to the internet domain name, "lomonaco.com." Specifically, MailPlanet brought the instant action seeking 1) a declaration that MailPlanet's registration of the domain name is lawful and does not violate any enforceable right of Lo Monaco in the United States; 2) an award of costs and fees under 15 U.S.C. § 1114(2)(D)(iv); 3) an injunction under 15 U.S.C. § 1114(2)(D)(v) including reactivation of the domain name and maintenance of registration to Plaintiff in order to prevent the transfer by the UDRP panel; and 4) such other relief as the Court may deem just and proper.

## II.  DISCUSSION

In its Motion for Summary Judgment, MailPlanet requests entry of judgment in its favor, stating that Defendant has not and cannot establish that it has any trademark rights in the United States; is barred under Federal Rule of Civil Procedure 36(c)(1) from introducing evidence to establish such rights; and that MailPlanet has not committed acts of unfair competition against Defendant in the United States.

As indicated by Plaintiff in its Motion for Summary Judgment, 15 U.S.C. § 1114(2)(D)(v) states that a "domain name registrant [in this case, MailPlanet] whose domain name [lomonaco.com] has been suspended, disabled, or transferred under a policy described under clause (ii)(II) [the WIPO decision] may, upon notice to the mark owner [Defendant Lo Monaco], file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act."  However, Defendant has indicated in its Opposition to the Motion for Summary Judgment that it is no longer contesting Plaintiff's ownership of the domain name.  Therefore, in its Opposition, Defendant also states a Motion to Dismiss based on lack of subject matter jurisdiction as there is no longer a contestable issue presenting a live case or controversy.  See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 (11th Cir. 2007) ("We have repeatedly said that when a district court disposes of a case on justiciability (mootness) grounds we will treat the district court's determination as if it was ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)).

**A.  Motion to Dismiss**

A motion to dismiss for lack of subject matter jurisdiction may be made at any time. Compagnoni v. United States, 173 F.3d 1369, 1370 (11th Cir. 1999).  Furthermore, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  The court's jurisdiction to consider a plaintiff's claim is limited by Article III of the United States Constitution, which permits federal courts to consider only actual "cases" and "controversies."  U.S. Const., Art. III; See National Adver. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005).  "[A] case is moot when it no longer presents a live controversy . . . If events that occur subsequent to the

filing of a lawsuit ... deprive the court of the ability to give the plaintiff ... meaningful relief, then the case is moot and must be dismissed." Troiano v. Supervisor of Elections in Palm Beach County, Fla., 382 F.3d 1276, 1281-82 (11th Cir. 2004); see also, Church of Scientology, 506 U.S. 9, 12 (1992); Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997); Chamber of Commerce of the USA v. United States Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980).

    **1. Case or Controversy**

"The difference between an abstract question and a "case or controversy" is one of degree . . . and is not discernible by any precise test . . . [;t]he basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289 (1979) (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) and quoting Railway Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)); see also, Church of Scientology of California v. U.S., 506 U.S. 9 (1992) (federal court has no authority to give opinions upon moot questions, abstract propositions, or to declare principles or rules of law which cannot affect matter in issue in case before it). Therefore, courts determine whether an actual controversy exists on a case-by-case basis. U.S. Fire Insurance Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991).

    In the instant action, MailPlanet has failed to demonstrate that there remains a substantial controversy to which the Court could grant meaningful relief–there is no concrete or imminent injury in fact as the Defendant has relinquished any claim to the domain name. Both parties agree that MailPlanet "is the current owner of the domain." (Defendant's Response, p. 2, para. 1;

MailPlanet's Addendum to Reply, p. 1, para. 1).  Thus, a declaration as to the lawfulness or unlawfulness of the actions under the Lanham Act is not appropriate.  Federal courts are not empowered to issue advisory opinions.  See Miccosukee Tribe of Indians of Fla. v. U.S., 259 F. Supp. 2d 1237 (S.D. Fla. 2003).  To invoke jurisdiction of a federal court, the litigant must have suffered, or be threatened with, actual injury traceable to the defendant that is likely to be redressed by a favorable judicial decision.  Lewis v. Continental Bank Corp., 494 U.S. 472 (1990).  Plaintiff MailPlanet is not threatened with any actual injury traceable to Defendant now that the dispute regarding the domain name has been withdrawn.

As stated by the First Circuit, "Section 1114(2)(D)(v) provides a registrant who has lost a domain name under the UDRP with a cause of action for an injunction returning the domain name if the registrant can show that she is in compliance with the [Anticybersquatting Consumer Protection Act, "ACPA"]."[4]  Sallen v. Corinthians Licenciamentos LTDA, 273 F. 3d 14, 26 (1st Cir. 2001).  In the instant case, it has not been contended that the domain name has been transferred to Lo Monaco.  Plaintiffs sought to forestall that action.  However, as of Defendant's relinquishment of claims to the domain name, there is no reason for that transfer to take place and thus no action needed to forestall it.  In contrast, other cases in which plaintiffs sought a

---

[4]"Congress passed the ACPA in 1999 as an amendment to the Lanham Act to prohibit cybersquatting":
> Cybersquatting occurs when a person other than the trademark holder registers
> the domain name of a well known trademark and then attempts to profit from this
> by either ransoming the domain name back of the trademark holder or by using
> the domain name to divert business from the trademark holder to the domain
> name holder.

Compana, LLC. v. Aetna, Inc., 2006 WL 829111, *6 (W.D. Wash. March 27, 2006) (quoting Bosley Med. Inst., 403 F.3d 672, 680 (9th Cir. 2005) (internal citation and quotation omitted)).
In contrast, 15 U.S.C. § 1114(2)(D)(v) was to prevent "reverse domain name hijacking, whereby trademark holders abuse anticybersquatting provisions to take domain names from rightful, noninfringing registrants."  Sallen, 273 F.3d at 29.

declaration that they were not in violation of the ACPA involved live controversies between the parties.  See e.g., America Online Latino v. American Online, Inc., 250 F. Supp. 2d 351, 359 (S.D.N.Y. 2003) (the court rejected defendant's challenge that there was no case or controversy as the domain name had been transferred pursuant to the WIPO decision and plaintiff sought its return).

In Sallen v. Corinthians Licenciamentos LTDA, the First Circuit stated that "[i]f § 1114(2)(D)(v) were read to permit federal jurisdiction in instances where no Article III case or controversy exists, then the statute would run afoul of the Constitution. But we do not read § 1114(2)(D)(v) as granting federal jurisdiction over mere abstract claims of federal right where no Article III case exists." Sallen v. Corinthians Licenciamentos LTDA, 273 F. 3d 14, 25 (1st Cir. 2001).  However, in that case, the Court found that "[a]lthough [the defendant] has stated that it has no intent to sue [the plaintiff] under the ACPA for his past actions related to corinthians.com, there is indeed a controversy between [them]" because both parties were asserting rights to the same domain name.  The domain name had been transferred to defendant, which plaintiff alleged was in contradiction to his rights to the name.  In contrast to the Sallen case, there is no longer a dispute between the parties—unlike the defendant in Sallen, Lo Monaco is no longer asserting exclusive rights to the domain name.

Also on point is Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd., in which the court found that there was no live case or controversy.  Bruno Indep. Living Aids, Inc. v. Acorn Mobility Services, Ltd., 286 F. Supp. 2d 1020, 1020-1022 (W.D. Wis. 2003).  In a case for patent infringement, the plaintiff had conceded, in response to defendant's motion for summary judgment, that the patent claims at issue were invalid and thus the case was moot.  Id.

The defendant argued that there remained a controversy as it had apprehension of being accused in later litigation of infringing a reissued patent.  Id.  However, the court did not find that apprehension sufficient to establish a live case or controversy as it was purely speculative and the plaintiff did not need to "'unconditionally agree not to sue [them] for infringement'" in the future.  Id.  They also noted that "[t]he doctrine of collateral estoppel might well prevent plaintiff from asserting infringement as to other claims of infringement . . . that could have been brought in this lawsuit.  But that is a question for another day."  Id.; See also, Brown v. Armstrong, 957 F. Supp. 1293, 1303 n. 8 (D. Mass. 1997) (Lanham Act false advertisement claim for injunctive relief based on false statements in an infomercial was moot where the infomercial had stopped running and there were no plans to air it in the future); Stephen W. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 827 (9th Cir. 1997) (grocery store operator's claim for declaratory judgment that it had priority in use of trade name was moot where the competitor had announced that it would rename its stores); Hendrickson v. eBay, Inc., 165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001) (finding that plaintiff's Lanham Act claim for injunctive relief was moot as defendant had agreed not to run ads for the identified allegedly infringing copies of movies; plaintiff no longer had a live case or controversy in seeking injunction against any potential false and/or misleading advertisements in the future).

Plaintiff further argues that the case is not moot because there is the "hang-over effect" of the adverse WIPO decision finding bad faith on MailPlanet's part.  MailPlainet is concerned as to the "adverse effect on [its] continuing business operations in the domain industry.  In future domain disputes, an opposing party will cite the complained of WIPO decision herein, all to MailPlanet's detriment."  (Reply at p. 9).  However, it is not up to this Court to make

determinations as to the findings by the WIPO (and the decisions of the WIPO are not even binding upon this Court[5]).  Any determination as to the actions of MailPlanet would be anew, but could only be made upon an actual case or controversy between the two parties–not simply to render an advisory opinion as to the WIPO's findings.

### 2. Voluntary Cessation

Plaintiff does point out that "[t]he doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior," Sheely, 505 F.3d at 1183 (citing Troiano, 382 F.3d at 1282).  The voluntary cessation doctrine addresses the concern that the " the courts would be compelled to leave the defendant free to return to his old ways," if deprived of jurisdiction.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000); see also, Sheely, 505 F.3d at 1183-1184 (11th Cir. 2007).  As indicated by the Supreme Court in United States v. W.T. Grant Company, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953).

However, the voluntary cessation doctrine expresses concern as to a defendant's alleged *illegal/offending* conduct.  In the instant case, the Defendant Lo Monaco is not charged with an illegal or offending conduct, but rather Plaintiff seeks to determine if its *own* actions were illegal.  Nor is Defendant seeking to avoid acknowledging its wrongdoing, as it has never been alleged that Defendant committed any wrongdoing.  In Sheely v. MRI Radiology, which Plaintiffs cite,

---

[5] See e.g., Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona, 330 F.3d 617, 626 (4th Cir. 2003); International Bancorp v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco, 192 F. Supp. 2d 467, 475 n. 16 (E.D. Va. 2002).

the court was concerned that a facility, which had denied access to a woman with a service dog yet during the course of litigation implemented a service animal policy, would simply forgo the policy once the court declared the action moot. Sheely, 505 F.3d at 1177-1189. The facility could then return to *their* illegal activity–denying service–but the plaintiff would be barred from reopening the action. Id. at 1189. It would be up to the next person denied service to litigate the issue again. Id. However, in the present action there is not the similar concern as to Lo Monaco raising the issue subsequent to a dismissal based on mootness. The Defendant is indicating that it will not challenge any conduct by Plaintiffs as illegal, thus there is no need to determine if Plaintiff is acting unlawfully towards Defendant. The instant action only involves the present plaintiff and defendant. If Lo Monaco were to bring suit against MailPlanet, as expressed by the Plaintiff in its Reply, then Lo Monaco would likely be barred from such an action based on *res judicata*[6]. In addition, allegations of possible future injury do not satisfy case and controversy requirements of Article III; threatened injury must be "certainly impending" to constitute injury in fact. Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)).

### 3. Damages and Attorney's Fees

Plaintiff argues that even if the case were moot as to the declaration, it is also seeking damages. 15 U.S.C. § 1114(2)(D)(iv) allows for attorney's fees and damages but only when the

---

[6]In many cases involving plaintiffs seeking a declaration of the lawfulness of their actions/infringment or noninfringement, the Defendant mark owners brought counterclaims as to their rights to the mark, which Defendant Lo Monaco has not done in the instant action. See e.g., Maruti.Com v. Maruti Udyog Ltd., 447 F. Supp. 2d 494, 496 (D. Md. 2006); Goldfaden v. Miss World (Jersey) Ltd., 2005 WL 1703207 (D.N.J. 2005). As noted previously however, "[t]he doctrine of collateral estoppel might well prevent [Defendant] from asserting infringement . . . that could have been brought in this lawsuit. But that is a question for another day." Bruno Indep. Living Aids, Inc. v. Acorn Mobility Services, Ltd., 286 F. Supp. 2d at 1022.

domain has been suspended by the registrar based on a "knowing and material misrepresentation" by another that the domain name is identical or confusingly similar or dilutive of a mark.  However, MailPlanet has never alleged that Lo Monaco sought the suspension of the domain name based on a material misrepresentation.  In addition, as to the attorney's fees MailPlanet is seeking, in <u>Steel Co. v. Citizens for a Better Environment</u>, the Supreme Court stated that an interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.  <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 107-08 (1998).

Plaintiff further argues that beyond the declaration as to the lawfulness of its actions, it is entitled to damages and points to 15 U.S.C. § 1117.  Plaintiff argues that under 15 U.S.C. § 1117(a) and (d) it may recover profits, damages, the costs of the action, and in exceptional cases, attorney fees.  However, these provisions discuss violations under section 1125 as established in a civil action:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 U.S.C. § 1125(a) or (d)], or a willful violation under section 43(c) [15 U.S.C. § 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) and

> In a case involving a violation of section 43(d)(1) [15 U.S.C. § 1125(d)(1)], the plaintiff may elect, at any time before final judgment is rendered . . . to recover, instead of actual damages and profits, an award of statutory damages. . . .

15 U.S.C. § 1117(d). Yet, MailPlanet was not asserting a cause of action for a violation by Lo Monaco under 15 U.S.C. § 1125. Rather, they were seeking a determination pursuant to 15 U.S.C. § 1114(2)(D)(v) that *they* had not violated those provisions. The award of profits, damages, and costs of the action would have been granted to Lo Monaco if it had filed an action under § 1125(a) or (d) and established that Mailplanet had violated their rights to the mark. 15 U.S.C. § 1125(a), (d). 15 U.S.C. § 1114(2)(D)(v) only provides relief in the form of a declaration that the domain name usage was not unlawful and "injunctive relief . . . including the reactivation of the domain name or transfer of the domain name." 15 U.S.C. § 1114(2)(D)(v). MailPlanet is not entitled to an award of costs under either sections 1114(2)(D)(v), 1114(2)(D)(iv), or 1125 for seeking a declaration that it was not itself acting unlawfully.

Thus, MailPlanet has no basis for its complaint and this Court lacks subject matter jurisdiction as there is no live case or controversy. Accordingly, the Court has no jurisdiction to determine the merits of Plaintiff's Motion for Summary Judgment.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE-34] is hereby **GRANTED**.

2. The above-styled action is hereby **DISMISSED** in its entirety.

3. All other pending motions are denied as moot.

4. The Clerk shall close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of December, 2007.

*William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Howard M. Neu, Esq.
Robert C. Kaine, Jr., Esq.
Michael J. Colitz, III, Esq.